### In re ROYSTER COMPANY, et al., Debtor.

### Bankruptcy No. 91–7012–8P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 20, 1992.

As Amended April 20, 1992.

John K. Olson, Tampa, Fla., William Rochelle, Fulbright & Jaworski, New York City, for debtor.

Mark D. Silverschotz, New York City, for Unsecured Creditors Committee.

## ORDER ON MOTION BY SUPERFOS A/S AND SUPERFOS INVESTMENTS LIMITED FOR APPOINTMENT OF A TRUSTEE OR, IN THE ALTERNATIVE, AN EXAMINER

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion filed by Superfos A/S and Superfos Investments Limited (Superfos), in these yet-to-be-confirmed Chapter 11 cases. Superfos contends that the appointment of a Trustee or, in the alternative, an Examiner, is warranted because, as Superfos alleges, current management of Royster Company (Debtor) is so hopelessly involved with other interests, the affairs of the Debtor are so intertwined with management's own selfish interests, and management is using or have used their position to utilize funds of the Debtor to acquire property in which they hold a controlling interest, which entities are not involved as debtors in these Chapter 11 cases.

The central thrust of the argument of Superfos relates to the interest in a rock Mine (the Mine) located in Manatee County, Florida currently owned by Nu–Gulf Industries (Nu–Gulf), a non-debtor which is a wholly-owned subsidiary of Gulf Atlantic Corporation (GAC), also a non-debtor, which in turn was acquired by Wingate Creek Acquisition Corp. (Wingate), also a non-debtor. It is alleged that Erol Beker (Beker) who holds 44.5% interest in the Debtor and Sameer Zahr (Zahr) who owns 44.5% of the outstanding shares in the Debtor, hold a 50/50 interest in Wingate, which is the indirect owner of the rock Mine of Nu–Gulf, through its stock ownership interest in GAC and indirectly in Nu–Gulf. It is also intimated by Superfos that the law firm of Fulbright & Jaworski, counsel of record for this Debtor, also represents the interests of Beker and Zahr, and Royster Phosphates, Inc. (RPI), a non-debtor subsidiary of Royster, and of course, also Wingate GAC and Nu–Gulf.

The allegation advanced by Superfos is based on the undisputed fact that on November 30, 1990, the Debtor "advanced" $3 million to its fully-owned, non-debtor subsidiary, RPI. RPI in turn paid the $3 million to Commodities Trading Int'l. Corp. (CTI), which is currently a debtor involved in a Chapter 7 case in Connecticut. Zahr and Royster each hold 50% of all outstanding shares of CTI. At or about the same time, CTI turned around and paid $3 million to reduce its outstanding $15 million line of credit it had with Internationale Nederlander Bank, N.V., F.K.A., N.M.B., Postbank Groep, N.V. (NMB) and then NMB loaned $3 million to CTI. The seemingly unending travel of this $3 million did not end however, with CTI, because CTI "advanced" $3 million to Wingate, who purchased all outstanding shares of GAC from Windrose Partners L.P. (Windrose) for $3 million, although in addition to $3 million cash Wingate also executed a promissory note in the principal amount of $1.8 million in favor of Windrose. As noted before, GAC owns 100% of all outstanding shares of Nu–Gulf, the owner of the Mine.

In connection with these transactions, Beker granted RPI an option to purchase the stock of Wingate. Also, NMB purchased a $13.5 million GAC note held by

Nu–West Industries (Nu–West), a former owner of the Mine, for $2.5 million in cash and $3.285 million in letters of credit. Neither the Debtor nor RPI own any of the stock of Wingate or Nu–Gulf. Beker and Zahr are the guarantors of the bank debts of the Debtor and RPI, and the Debtor is a guarantor of RPI's bank debts.

It should be noted that mined rock is a major raw material necessary in the processing operations of the Debtor and RPI. Both the Debtor and RPI obtain their rock requirements from Wingate. According to Superfos, the price paid by the Debtor and RPI equals the operating expenses of the Mine and all the debt service of Wingate, GAC and Nu–Gulf. According to the Debtor, this price may not exceed the current market prices. Thus, according to Superfos, the Debtor and RPI, in fact, fund the operation of Wingate and its subsidiaries.

Nu–Gulf, by itself or through its parent corporation, is presently negotiating a sale of the Mine. At the same time, the Debtor is simultaneously negotiating the sale of its assets. It is alleged by Superfos that Beker is negotiating a release of his guaranty as part of negotiations for the sale of the Mine and Debtor's assets.

Based on these facts it is the contention of Superfos that cause exists to appoint a Trustee or an Examiner to protect the interest of all creditors and other interests of the estate. Superfos argues that the management of this Debtor cannot make fair, effective and equitable decisions regarding the Debtor's assets and potential causes of action because of management's conflicts of interest based on the transactions and relationships just described.

Section 1104(a) of the Bankruptcy Code provides the Court shall order the appointment of a Trustee or an Examiner (1) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case," or (2) if such an appointment is in the interest of creditors, any equity security holders and other interests of the estate.

A party seeking the appointment of a Trustee must show by clear and convincing evidence that the appointment of a Trustee is warranted. *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, at 984 (Bankr. E.D.Pa.1988). In determining whether an appointment is in the best interest of the estates, the Court must consider the Debtor's past and present performance and the prospects for the Debtor's rehabilitation, and weigh the benefits that would be derived by the appointment of a Trustee against the expense of the appointment. *In re General Oil Distributors*, 42 B.R. 402, at 409 (Bankr.E.D.N.Y.1984). As a general rule, ... a trustee will not be appointed where affiliate transactions are called into question, unless the movant can demonstrate that the transactions were improper, detrimental to the debtor estate, or were actually fraudulent." Norton Bankruptcy Law & Practice § 53.04; *See also General Oil Distributors, supra*, 42 B.R. at 402; *In re Allsun Juices*, 34 B.R. 162 (Bankr.M.D.Fla.1983).

One would be less than candid not to concede that this seemingly unending maze of transactions between the Debtor and various entities and Beker and Zahr casts a large shadow over the fairness of these transactions, and at first blush might warrant a serious consideration of the request of Superfos to appoint a Trustee or, in the alternative, at least an Examiner. The control of Beker and Zahr of the affairs of the Debtor and its management was pervasive at least until the commencement of these cases. However, these Debtors now are operating as Debtors-in-Possession under the strict rules governing the Debtor-in-Possession under the watchful eye of a very active Creditor's Committee, the Bank Group, and the United States Trustee. The Official Creditor's Committee and the Bank Group oppose the appointment of a Trustee. While one might make a case for the appointment of an Examiner, these transactions have been fully revealed and the Creditor's Committee has been informed of all details of these transactions and may so desire to seek the appointment of an independent special

counsel to pursue what other action might be available against Beker and Zahr.

Considering the totality of the picture and the current status of these Chapter 11 cases, which are possibly close to confirmation of a total liquidation plan, it is the considered opinion of this Court that it would be inappropriate to appoint a Trustee at this time. The contention of Superfos that the Debtor will not be able to make a detached and objective view regarding proposed sales is without merit for the reason that any proposed sale by this Debtor will be scrutinized by the Creditors Committee, by the Bank Group, by the U.S. Trustee and certainly must be approved by this Court with proper notice and hearing. Thus, if it appears that the management of the Debtor did not deal fairly with the affairs of the Debtor and with its assets, certainly any party of interest may bring such proof as is available to this Court's attention.

In addition, there is no question that the Creditor's Committee is in a position to ensure that any Plan of Reorganization must contain a provision for the appointment of independent counsel who, post-confirmation, will have the right to investigate these transactions and if warranted, to pursue what actions might be appropriate against any of the non-debtor entities involved on behalf of the general estate and for the benefit of the unsecured creditors. In sum, this Court is satisfied that the Motion to Seek Appointment Of A Trustee Or, In The Alternative, An Examiner by Superfos is without merit and should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion For The Appointment Of A Trustee Or, In The Alternative, An Examiner be, and the same is hereby, denied without prejudice.

DONE AND ORDERED.